# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

### THE SPRINGFIELD COAL MINING COMPANY

*v.*

### ELIZABETH GEDUTIS.

*Opinion filed April 18, 1907.*

1. MINES—*the kind of timbers which a miner desires to prop a roof should be determined by him.* A miner has the right to demand such timbers, including props, cap-pieces and cross-bars, as he deems necessary for the proper supporting of the roof where he is working; and the fact that the mine manager, in his judgment, concludes that only props and cap-pieces are necessary, and furnishes them, but fails to furnish the cross-bars demanded, does not relieve the mine owner from liability for violation of the statute.

2. SPECIAL INTERROGATORIES—*special interrogatories must relate to ultimate facts.* The trial court is justified in refusing to submit a special interrogatory unless it relates to an ultimate fact of such a character that it would control the general verdict.

3. SAME—*when a special interrogatory is properly refused.* A special interrogatory asking the jury whether there were any props and cap-pieces not in use in the room at the time the injury occurred, of suitable length and dimensions to have been used to prop the roof, is properly refused, where the jury might have found that such was the case, and yet, under the evidence, have found that the use of such props and cap-pieces, without the cross-bars demanded by the miner, would not have made the roof reasonably safe.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. J. A. CREIGHTON, Judge, presiding.

CONKLING & IRWIN, and J. C. & W. B. McBRIDE, for appellant.

SHUTT, GRAHAM & GRAHAM, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is an action of case brought in the circuit court of Sangamon county by appellee, against the Springfield Coal Mining Company, for damages by reason of the death of her husband, Kazimer Gedutis, who lost his life in appellant's mine August 16, 1904. The declaration charges appellant with a willful violation of the statute by willfully failing to deliver to the deceased, on demand, props, caps and timbers of suitable lengths and dimensions for securing the roof of his room, and that in consequence of such failure and willful misconduct of appellant a large mass of rock, slate, etc., fell from the roof of his working place, and so crushed, bruised and mangled Kazimer Gedutis that he died; that the deceased left appellee, his widow, and three children, dependent upon him for support. Upon a trial of the cause in the circuit court of Sangamon county the jury found appellant guilty and assessed appellee's damages at $1995. A motion for a new trial was overruled and judgment rendered upon the verdict, from which an appeal was prosecuted to the Appellate Court for the Third District, where the judgment below was affirmed. By a further appeal the record is brought to this court for review.

At the time of his death the deceased was engaged in mining coal in room 25 of the Black Diamond mine, which was being operated by appellant. The roof over the work-

ing place of the deceased was unsafe. This condition had existed for several days before the accident. Appellee contends, and there is evidence in the record fairly tending to support the contention, that the deceased had repeatedly demanded of appellant props, cap-pieces and cross-bars for the purpose of securing the overhanging roof, and that appellant wholly failed to furnish any cross-bars, and as to whether there were any props or cap-pieces in the room not in use the evidence is conflicting. There is also a conflict in the evidence whether props and cap-pieces alone, if any had been furnished, were suitable and sufficient for propping the roof in this room. The evidence is undisputed that on the 16th of August the deceased was killed by a fall of a heavy piece of slate from the roof of his working place.

By its thirteenth, fourteenth and fifteenth instructions, which were refused by the court, appellant sought to submit to the jury the proposition that if the mine manager visited the room in question and caused such timbers, props and caps as in his judgment were suitable and sufficient to properly support the roof to be furnished, then there could be no willful violation of the statute by appellant. In other words, the main contention of appellant is that the mine manager is the sole judge of the suitableness of the timbers which he furnishes on the demand of the miner, and although the miner may demand cross-bars, the manager may, if in his judgment he thinks they are sufficient, furnish props and caps only, and if the manager should be mistaken as to the suitableness of the timbers furnished, the appellant would not be guilty of a willful violation of the statute. Section 16 of the Miners' act is not susceptible of the construction sought to be placed upon it by appellant. The proper construction to be placed upon said section in this regard is not an open question in this court. In *Western Anthracite Coal Co.* v. *Beaver,* 192 Ill. 333, in considering this section of the statute, it was said (p. 338) : "The statute should have a reasonable and liberal construction

and one which will accomplish its purpose. We are of the opinion the miner must be the one to determine the length and dimensions of the props and cap-pieces which he deems necessary to properly secure the roof for his own safety. If he orders six and one-half foot props, the owner or operator has not complied with the statute when he has furnished props which must be spliced or sawed in two before they can be used." Since our decision in the *Beaver case* this section of the statute has been amended, but the amendment is not such as to require any different construction, and the *Beaver case* was re-affirmed, under the new statute, in *Kellyville Coal Co.* v. *Strine,* 217 Ill. 516. We are of the opinion that under this statute when the miner makes a reasonable and timely demand for timbers of a particular and specified kind, to be used in propping the roof of his working place, the operator should furnish him such timbers as are called for. The practical miner who is at work in a given room and whose life is at stake is quite as likely to call for the proper timbers as the mine manager would be to furnish suitable props if the selection was left to his choice or convenience. The trial court did not err in refusing instructions 13, 14 and 15, and appellant's contention as to the construction of section 16 of the Miners' act cannot receive our approval.

It is next insisted by the appellant that the court erred in overruling its objection to the following question propounded by appellee to the witness Gowanski: "Now, at the time you went in there, just after the death of Gedutis, what cross-bars, if any, were there in the room?" It is suggested that this question had a tendency to direct the attention of the jury to the subject of cross-bars, and had the effect of showing plaintiff's theory of the case that cross-bars were, in her judgment, necessary. The only objection made to this question at the time was a general objection, but even if appellant had made the specific objection in the court below that is insisted on here its position would not

be tenable.   We see no objection to the question and there was no error in overruling appellant's objection thereto.

Appellant's objection to another question put to a member of the pit committee is equally untenable.

Appellant submitted to the court a special interrogatory, and asked that the same be submitted to the jury and an answer thereto returned with the general verdict.   The court refused to submit such interrogatory, and the appellant excepted.   The special interrogatory was as follows: "Were there any props and cap-pieces not in use in the room of Gedutis at the time of the injury that were of sufficient length and dimensions that they could have been used in propping the roof?"   There was no error in refusing to submit this interrogatory to the jury.   It did not embody a controlling fact in the case.   If the jury had answered the interrogatory in the affirmative it would not necessarily have controlled the general verdict.   The jury may have found that there were props and cap-pieces in the room of sufficient length and dimensions that could have been used in propping the roof, and at the same time agreed with appellee's contention that the conditions were such that the roof could not have been made reasonably safe without the use of timbers also, and there was evidence upon which a general verdict of this character might stand, regardless of whether there were props and cap-pieces in the room.   The court is not required to submit a special interrogatory unless it relates to ultimate facts of such a character that it would control a general verdict.   *Chicago and Alton Railroad Co. v. Harrington,* 192 Ill. 9, and cases cited.

Finding no error in the record the judgment is affirmed.

*Judgment affirmed.*